The first case and only case for the afternoon docket is case number 4-16-0290, in red, the Trust of James W. Butcher, et al., appearing for the appellant is attorney Matthew Cate and also attorney Michael Fleshman. It is my understanding, though, Mr. Cate, you will be arguing and Mr. Fleshman will not. Is that correct? Yes, it is. All right. Thank you. And then for the appellees, we have, let's see, attorney Anita Cooper is, and Ms. Cooper, you're appearing for the appellees Ruth Ann Roberts and James Lee Butcher. Is that right? Yes, sir. Okay. And then attorney Elliot Turpin, good afternoon, and you are representing appellee Michael Ray Butcher. Is that right? Yes, sir. Okay. And counsel, for the appellees, you're splitting your time ten minutes apiece. Is that correct? Yes, sir. Okay. Thank you, counsel. Mr. Cate, you may proceed. May it please the court. This body has before it not only an interpretation of a trust, but an interpretation of what I would consider basic contract law. James W. Butcher and Ruby Butcher created a trust, a living trust as many husbands and wives do, in this case, regarding some farmland. It would ultimately kick in and go down to the beneficiaries on the survivor of the two of them. That would happen when James passed away in early 2012. The assets should have been equitably divided at that time by the two trustees, in this There were five beneficiaries, and those were the five children, Ruth, James, Paul, Mike, and Bill. It wasn't divided, and they had had different meetings to try to divide this land and try to do so in some equitable fashion. There was one in early January of 2013. They tried to divide it. There was discussion of easements. Nobody could come to an agreement. Then in June of 2013, the beneficiaries had a big meeting. They all agreed on the division of land. Not only did they agree, and just kind of like, well, this will be a good starting point. No, they agreed to the actual division, not just have a handshake. Ruth wrote it down, described out the division, everybody signed off on it, and then left. Now, there would be a later boot to work out, and if somebody got a little more ground, then the boot, in terms of cash, would take care of the otherwise land division. No easements, though. Our clients, Bill and Paul, were to receive, they at least thought they would be receiving the ground they'd agreed to. Inexplicably, however, the trustees issued deeds that had easements, in this case, for the benefit of Mike. This wasn't done at the agreement stage. When they had that meeting, June of 2013, no agreement as to an easement. It's not until later that the trustees and Mike apparently realized it's more convenient for Mike's ground, that he'd agreed to for the division, to have this easement. Now, again, I'll get to this later, it's more convenient. Not necessary, not explicit, but it's just simply more convenient access. So Bill and Paul, this isn't what we'd agreed to. It's the equivalent, your honors, and I don't want to try to make light of this, but go believe you've agreed on the car, you've agreed on the model, you've agreed on the engine, the color, everything, you're great, you're going to pick up this car, and you've been waiting for it. And it's Sunday, or it's Saturday, and you're there, and the car dealer says, there's your car, we're all set, the make, the model, the engine, everything just like you want, and it's in white. You'd agreed on red. The car dealer says, too bad, so sad. You're going to take that anyway, and we're doing this because we have the authority to do so. And not only that, you can't back out of it. We'll be using that all against you later on. Bill and Paul should not be required to take something they hadn't agreed to. Now, I'm sure counsel will argue, the easement shouldn't have been a big deal. Minor value. Shouldn't have mattered. And it does matter. It mattered to Bill and Paul. They wouldn't have agreed otherwise. There's testimony to that effect, and they didn't agree previously in that January meeting of the easements. The argument will be that, well, the trustees have that power. They have the explicit power and the trust to grant easements. So why shouldn't this court say they can do that? Isn't that correct? It absolutely is, Your Honor. Absolutely is. They have the ability to add, but they have to do so in the capacity as a fiduciary, acting for the best interest of all the parties involved. And in this particular case, when they've agreed on, let's say, day one as beneficiaries, all five in the room, as to a division of ground, they can't then on day two or three or four say, you know what? We didn't really like that division. We're going to fix that. We'll put our trustee hats back on and disbenefit Mike, and now give that easement. Now, I would argue, Your Honor, that if they had the power to do easements, they had the power to also sell, they had the power to mortgage. Under the same argument you're going to hear from counsel, if they had the power to grant easements, they could have used other powers against Bill and Paul the same way. My point being, they have to act, and they're locked in at that point, so giving Bill and Paul exactly what they agreed to. And then you go from there to then, I think, Attorneys Gillingham and Turpin, you'll hear arguments that, I think they understand that the trustee power argument is maybe not the strongest. So now you're going to hear arguments that, you know what? We have an easement by necessity, and by prescription, and also by license. So don't worry that the trustees have the power. We also have these other ways we should get this easement. Two things there. That actually, the first time it was being raised on appeal, I understand the court can affirm on any basis, but even on the record, in the appeal, in the appellee's brief, they acknowledge it's not one of necessity. He had access to the ground right next door. Not the kind of access he wanted, not to bring the big equipment through. But that's not by necessity. It's not by prescription. It's surely not by license. A license allegedly going back to their father, saying, well, since the father would have crossed there more conveniently, that that license would somehow pass on to Mike. My point is, none of those things are applicable and then grant an easement after the fact on an issue that was never fully litigated below. But at the same time, your honors have the power to deny that based on the brief of the appellee themselves. Now, inexplicably, this then moves into, later on, the issue of rents. So this is being litigated. Bill and Paul, they don't accept their deeds, so then it's being litigated before the court down in Macoupin County. It goes on. It's argued. There's trial. All these different things in the motion to reconsider. And then at that point, lo and behold, we want rent. We agreed to our deeds, the other three, Mike, Ruthann, and Jim, so they took their deeds. By the way, there are no easements, obviously, across their grounds. They got exactly what they agreed to in the meeting and gave themselves their deeds. Bill and Paul didn't accept their deeds, so now they say, you know what? We should be entitled to rent also. We took our ground. We're farming it, just as everyone agreed. But now we're entitled to get rent from you two. You should pay into the trust to be re-divided amongst all of us. There are so many different ways that it was wrong, but I'll start with the most apparent. The most apparent is that there was an Eddie Carpenter letter, who was the previous trust counsel, which explicitly stated everyone would farm the ground they'd agreed to while this thing was being litigated. Counsel argued that was a one-year only deal. It was apparently a one-year only secret deal because they never raised the issue again. They allow everyone. Everyone farms it. It was about it.  They don't ever say, oh, by the way, that Eddie Carpenter deal was just that year. The gotcha years are two, three after that, and we want to rent for this ground now. Moreover, they never try to eject our clients. They never notify them of the terms of the rental. It's not again until the motion to reconsider time period that this issue even is raised or comes up in terms of what they're entitled to now. That's because they're simply not entitled to rents on this ground. Now, we fully agree and acknowledge in the court below us that Bill and Paul would have to pay the or reimburse the trust, for example, for real estate taxes or insurance to make it equitable among the parties. But in no sense would it be equitable to allow the three who accepted their deeds in terms of it to then farm it, get the profits from it, and then charge Bill and Paul on theirs. I think it's not only against the agreement that they already made. So I was very impressed by the obvious care and diligence that the trial court gave to all of this. It's actually a complicated situation, and we have before us a lengthy trial court memorandum expressly discussing all of these various points. And I suppose my question is, what did the trial court call wrong? It heard and saw all of this. It heard and saw all the same arguments. It sounded very persuasive to me. Why shouldn't I accept it? Your Honor, you shouldn't accept it because in some areas, when the Honor is reviewing a de novo, you're sitting as a court of first impressions. Obviously, you well know. In other areas, the trial court judge got it wrong.  That's why, Your Honor. And remember, too, this is a situation, and I know Your Honor is giving, and stating I should give more deference to Judge Dale at the trial court level, and I understand he had lengthy rulings in this matter. I would argue that it was possibly not as thought out as each of the points as maybe Your Honor would state. He asked each of the parties, as you rightly recall from the record, it was complicated. There were a number of issues litigated between the parties. He said, okay, each side need to give me a background on this and an order on this. And spell out what you want. Well, obviously, both sides put everything in the kitchen sink for themselves, as any good, jealous advocate would for their own client. I think both sides, assuming the trial court, would pick a little bit from each one of what he ultimately thought. It happened in this particular case that he sided with the appellees on every single issue. And not to say that it couldn't have happened that way, and I would argue that it goes a bit further than that, and I think lends itself to being against the manifest way of the evidence, when, as shown in the record on the motion reconsider, the trial court was not even clear at points on what it had ruled. I understand time had went by between those, but there are several different points that are apparent on the record. The trial court is asking the parties how it ruled and what it ruled in certain ways. Well, Mr. King, as I had occasion to mention earlier, we're on the appellate court now, this panel, but we represent at least 40 years' worth of cumulative trial court experience. Absolutely. It's been a while since I was in that position, but I remember asking counsel to submit to me their suggestions and findings and all the rest of it for my consideration. And I would be very much taken aback by this kind of argument that I abandoned my independent judicial position by accepting the arguments presented by Party A and not Party B. Am I under some kind of obligation that I have to split the baby here? You seem to be saying I abandoned my judicial independence. No, I believe that normally. And I bet Your Honor at times wouldn't do that very thing. But on issues like this, there's complications. Well, it's fact-intensive, and if the facts called for it, but by the fact in this case that the trial judge didn't think they did, you're suggesting the judge just abandoned his independent judicial thinking. What's the basis for that? I'm saying that, Your Honor, the way the decision came out and ultimately determined that Appellee's order was solely correct on every single issue, it was against the manifest way of the evidence. I'm not saying the court abandoned its duty. I'm saying that it didn't fully go through its different duties because I don't believe the court got it right. There's a situation, Your Honor. That's like the argument we hear constantly, well, the trial judge could not have considered X factor because I lost. Well, maybe he considered it, and you still lost. I understand. I'll be the first to admit every day of the week I make mistakes, and I've done things that maybe weren't the best argument. But in this particular case, when there's an issue, I'm going to say as straightforward as this, as whether or not parties agreed to a land division and then they get an easement across the ground, I believe that type of a decision is against the way of the evidence, and I think the trial court was wrong in that decision. Not simply because we lost. It's because it was an incorrect decision that the trial court came to that the law and the facts, the court simply couldn't come to that decision. That's what I'm trying to say, Your Honor. I'm not saying that Judge Diehl couldn't have possibly gotten it that way. I'm saying that it was inappropriate and an incorrect decision in him getting it that way. And I think the other issues that we talk about also lend themselves to that same issue. There was a personal property split that they had we also raised on appeal. There's a personal property split in which Bill and Paul agree to the cattle and the equipment that comes with a certain dollar amount. They expect to receive checks for the amount. They don't get those checks. They don't get them. And they say, well, there was delay because the trustees, I should say, because we shouldn't have had to do the checking account the same way. We shouldn't have had to divide that. And our clients, we're dividing all of it. It's done now. It's your ending. Page 20 of your brief, you say the actions by the circuit court amount to an arbitrary decision. Yes. Asserting that the court completely failed to make findings based on reason or fact. There was no reasoning behind the orders entered in the lower court. Rather, the circuit court relied on the party's attorneys to submit proposed orders, and then the court chose the order it liked best and entered it. And you're arguing that we, therefore, cannot say that the lower court performed an independent analysis. It seems to me to be an entirely baseless accusation. I'm saying that the decision that the trial court made based on the law and the facts before that time were not based in the facts and the law at that time. And it was a decision without basis. Your Honor, I'm not trying to beat a dead horse in that sense, but I think you have a situation in which the trial court judge did pick what it liked better in that sense. The last sentence is the aforementioned order is rendered entirely based on preference and not based on the rate of the evidence. Only because of, and I say that, I only say that because when you have point A to point B and you have the facts at issue, which we argued before that point, all coming to a culmination of that, if the trial court didn't have a well-reasoned, thought-out decision, they ultimately end up at that point, Your Honor. I think it is a situation where I think I believe many, many judges would ask for orders from both sides. And I understand that. I submit them all the time. And I find it very often, most often, the trial court judge then does adopt those, but a lot of times with their own insertions. And this complicated issues, I do find it somewhat surprising. I will say that. Somewhat surprising. There was no interjection at all from the trial court as to that lengthy, as you just said, complicated order. So I do find it surprising in that sense, Your Honor, to have that lengthy of an order in the trial court that said that every single point in every single way. So I'd probably say that that part was surprising. But our greater points are that on the issues raised before this panel and before this appellate court, that the trial court did not have the basis in law or fact to achieve the result that it did. When I say it abandoned its duty, I guess that maybe is a strong comment. I suppose it is. But it is because of everything we put before that and the arguments we put before that of how we get there, Your Honors. And I know it's a tough job at the trial court level. And I know this was a very complicated case. So it's definitely not that I'm saying that when parties submit the orders, that that's not a problem and the court can't just adopt them. I am saying on this particular case, I find it somewhat surprising when everything was found in that way, when the facts and the law were so explicitly against certain issues. And then later on, it lends itself on the motion to reconsider. The trial court itself seemed, and this is on the record, seemed confused as to what it had entered on those particular issues. How long after the hearing was that? Well, there definitely was time that it went past. Absolutely. No, I understand that. I do. And the court itself found it surprising that in its own order, it had referenced back to certain exhibits that were. And so I'm only saying that when you get from point A to point B, and the point A being facts and the trial and everything else. And I know I didn't do the trial, but all those different points that get into it. And the point B is the answer. It simply doesn't add up from point A to point B. Not on the base, not on the facts before that court, not the law of it this time. Was the survey conducted before the agreement? Well, there were several different surveys done. So there was a survey initially, there was a survey done beforehand, and then they also, the trustees then had them go out and survey again later on. Did the survey reveal the possible need of an easement? Well, the survey revealed, actually, was that there was some tillable ground as compared to non-tillable ground, where they had assumed, I think, I believe, and this is my assumption, I believe that the parties had assumed that it was non-tillable. So then it became, for Mike's ground, would become, oh, wait a minute, that's now tillable. And thus, he would like to be able to bring equipment across from his own ground onto this particular tract of ground. Whereas I believe that the testimony was before that he could bring, obviously, a walk between the two, he could bring an ATV in between the two, but could not bring bigger farm equipment without doing some heavy bulldozing work, which I believe is what they, I want to say Mike testified, approximately cost of $14,500, I believe, and it would be cost effective to do that kind of work, and thus the request, thus the giving of the easement by the trustees. Were any of the other three parties' lands contiguous to Mike's land? Other than the Biller-Paul ground, I don't believe so,  but the fact that none of them had an easement isn't really relevant because it was only the contiguous property that would be involved in an easement, right? For this particular tract, for Mike, the only other one, other than his own ground, than Mike's own ground, yes, it would only be Biller-Paul ground, other than Mike getting it from his own ground, correct.  I don't know that there was ever testimony on whether or not he disputed it or he just said he wouldn't have agreed to it with the easement at all, and so I don't know that there was actual dispute of this is worth more or worth less. Because he doesn't want his brother to be able to farm his land? He would not have agreed to the land division had it had an easement on it, for example. How would they fulfill the request of the trust document, quote, it is my earnest wish and desire that the farmland contained in the trust be retained by my children and the same be kept in the Butcher family? If they don't make that available to all the members of the trust. They definitely could. Mike still could have, and he testified to this, that he could have farmed this ground and he could have put a little bit extra. And the reason this was selected, I believe, is because it was contiguous to his own ground. He could have done the work to just bring it. Farmers do work like that all the time. They can take down some trees, do some bulldozing work. He could have done the bulldozing work and made it from his own tract and farmed his own ground. So I think it could definitely keep with the underlying purpose of the trust. So if I understand, the reason for the opposition to the easement is principled. Am I allowed to answer? You might. Thank you, Counselor. I don't believe that it was simply just opposition for opposition's sake. It was simply that at that point they would have not agreed to a land division in that same way. Or they would have requested that it simply be sold, which had been a previous option that the parties had not been able to come to an agreement on. I understand and I apologize for going over. Thank you, Mr. Cate. You'll have time in rebuttal. Thank you. Ms. Cooper? May it please the Court, I'm Anita Cooper and I represent the co-trustees Ruth Ann Roberts and James Lee Butcher. As you've heard in Mr. Cate's presentation, much of this litigation has focused on the division of the trust's real estate among the five parties. The specific issue is the one-half acre easement that encumbers the edge of land allocated to Paul Butcher for the benefit of land distributed to Mike Butcher. Mr. Turpin will address this issue in detail. I wish only to make a few quick points. First, the easement is worth less than $700. The value of the easement has never been in dispute. The trust real estate was valued at just under $2.5 million. It is amazing that the only portion in dispute is a small easement valued at less than $700. What accounts for that, do you believe? What accounts for... Why is this being litigated? I have asked that question myself many times and I do not have an answer. In the commercial world, I think the realities would have been different. Okay. The Butcher siblings originally agreed on a written land division scheme in January of 2013. This was a division scheme that was signed by all the parties. Without explanation, the plaintiffs renounced this division scheme. The co-trustees did not try to enforce this January agreement. Rather, they tried to accommodate the plaintiffs and six months later in June of 2013, a second agreement was entered into. Unfortunately, the June agreement had various defects and could not be implemented as contemplated by the parties. Mr. Turpin will get into that. Plaintiffs complained that the co-trustees made unauthorized changes to the June agreement. Plaintiffs are misconstruing the actions taken by the co-trustees. They were not attempting to enforce the June agreement because it just couldn't be done. Instead, they used their authority, the authority granted to them under the trust instrument, to divide the trust real estate in a manner that most closely matched the stated preferences of their siblings. Except for this small easement, the co-trustees transferred or attempted to transfer to each sibling the precise real estate requested by that sibling. Plaintiffs complained that the trust should have been terminated years ago, and yet they refused to close on their allocated real estate. This is particularly objectionable in the case of Bill, who would owe the trust considerable boot in order to receive his property. And I note the easement does not go across Bill's property. By not closing on his property and making his boot payment, Bill has prevented the co-trustees from paying Paul the cash portion of his real estate distribution. Because of the extensive delay in closing, the co-trustees have sought cash rent on the real estate remaining in the trust. It is the duty of the co-trustees to manage the trust assets for the benefit of all the beneficiaries, and this would include renting out the land remaining in the trust. Plaintiffs object to paying rent on the property they have been farming for four years. It has been totally within the power of the plaintiffs to avoid paying rent. All they had to do was close on their property. The defendants accepted their deeds, and in the case of Ruthanne and James, each paid boot of over $30,000. It is now questionable as to whether Bill will ever close on his allocated real estate. It is unfair to the other beneficiaries for him to continue to farm indefinitely without paying rent. The trust instrument authorizes the co-trustees to pay attorney's fees associated with the administration of the trust. Although plaintiffs have alleged that the co-trustees used their position to benefit themselves personally, plaintiffs fail to identify a single instance where the five siblings were not treated equally to the very penny. Plaintiffs have asserted nothing of substance in this lawsuit that has dealt with anything other than the administration of the trust. Certainly there are no issues on appeal that are not directly related to the administration of the trust. The plaintiffs' complaint about the manner of issuing checks for the livestock and equipment is a perfect example of how the co-trustees were forced to incur legal fees for administration of the trust for a meaningless issue raised by the plaintiffs. The plaintiffs' issue is not with the amount of the checks that were tendered to them for the livestock and equipment. In fact, it matched exactly what had been agreed to. Their issue is that the checks that were tendered to them went through the trust checking account. The defendants paid for the livestock and equipment, which was owned by the trust, by making payment to the trust. Those checks were deposited in a like amount, checks in a like amount, were then issued to Bill and Paul. How this is an issue to be litigated and brought up on appeal is unfathomable. Plaintiffs complain repeatedly that the trial judge failed to make an independent analysis of the issues and merely adopted orders prepared by the co-trustees. Plaintiffs ignore the most obvious reason that the trial judge adopted these orders. Plaintiffs failed to carry their burden of proof on any of the issues. Plaintiffs brought a meritless lawsuit, and when they were unsuccessful, they brought a meritless appeal. Thank you. Thank you, Ms. Cooper. Mr. Turpin. Good afternoon, Your Honors. May it please the Court, Counsel, as indicated before, my name is Elliot Turpin. I represent Michael Butcher in this case. I'd like to concentrate my efforts primarily on issue number one, the issue of the easement. There are two documents in this case that apply to the distribution of trust real estate, the trust instrument itself and the June 26, 2013 contract. So the question is, how can we reconcile these two documents to uphold what the trustees did and what the trial court affirmed? The trust, as we all know, there's no dispute about this, gives the trustees the right to grant easements on trust property. Illinois law authorizes this as well. The trustees at any time could have put an easement on any of this trust property for any reason or no reason. The June 2013 contract didn't specifically say that Mike gets an easement, but it did say that boot would be modified upon division of the 25 acres between Michael and Paul. The parties all testified that they knew that this property had to be surveyed after this contract was written. And Justice DeArmond, I believe your question was, did the survey reveal the need for the easement? It did, but the survey was done on this particular property after that contract was entered. So that's when it came up. So it wasn't until the survey was done that it was realized by everybody that there was a small piece of tillable land on the track that Mike was going to receive. Mike asked for an easement across Paul's 12.5 because he couldn't get his farm equipment to his tillable acreage across his own land. Paul said no, so the trustees exercised their discretionary power, issued the deeds with this easement, which also included reimbursement to Paul for this easement. Now, first of all, this was consistent with the intent of the trust. As the trust explicitly indicates, its intent was to evenly distribute the trust property and keep the farmland in the family. Well, if Mike gets a piece of the family farm that has farmland on it, but he can't access it to farm it, that doesn't carry out the intent of the trust. So how do you fix that? Well, the trustees fall back on their discretionary power given to them and the trust to issue an easement across the trust property that was going to be going to Paul. And also have Paul be reimbursed, obviously, for that easement, which he was. And again, as one of your honors brought up, he's never complained about being underpaid for the easement. I suspect that if he had, if it was just a matter of money, that probably would have been settled relatively easily. But the way they did it, Mike gets to farm his land, Paul gets reimbursed for the easement going across his property, the intent of the trust is carried out, the boot was calculated to the penny to make everything come out even. The action of placing the easement on Paul's property also complied with the terms and intent of the contract. The plaintiffs say that the issuance of the deeds with the easement modified the terms of the contract. Well, it really didn't. It completed the terms of the contract. If we look at that contract, there were certain terms that were left to be determined later, specifically the division or the assessment and payment of boot and the division of the actual property itself. Again, everybody testified that they knew that this property was going to have to be surveyed to find out where these boundary lines were. Everybody knew that they're on this 25-acre track, that there was a field, and that it was certainly possible that when the property line was put in to split that thing right down the middle, that part of that field could have done exactly like it did, landed on Mike's half. So that was something that had to be contemplated by everyone. And who would be the person or the party, the entity, if you will, to modify the boot? Well, obviously, that would be the trustee. That was part of the trustee's job. The trustee's job was to manage the trust money and to make the disbursements to whoever was entitled to it. So they would determine that boot, place it in the current report or final report, as the case may be, file it with the court, serve it on the parties, see if anybody has an objection or whether it is approved by the court. But again, the parties all knew that the property needed to be surveyed and appraised. So the final terms of the contract were left to be determined. But the law allows that. The law allows parties to enter into a contract which either allows for a term to be determined later by agreement of the parties or even by one party. And that's more or less what you had here. You had the trustee being given the authority under this contract to determine what the boot would be. In this case, the boot took into consideration the fact that Mike needed an easement on his property, or on Paul's property, to get to his. And when they did that, the easement was issued, the boot was paid. That made everybody square. That complied with the intent of the contract. Now, here's where I'm going to take issue a little bit with what Mr. Cate indicated about what the testimony was. I think one of us either read something that was not there or didn't read something that was there. Although Paul testified he didn't want an easement on his property, what we need to remember is that the reason he gave in court was simply that he didn't think Mike needed an easement. He thought he could access it from his land that was right next door. But as the court knows, there was plenty of evidence to the contrary. I mean, this was not simply a matter of there being another field or a pasture right next door that you could easily drive a tractor or a combine across. But we saw the pictures, we heard the testimony. There were hills, there were ravines, there was a creek that had to be crossed in two places. And from the looks of those boulders that I saw in some of those pictures, I questioned whether even a bulldozer could make a crossing sufficient to get a heavy piece of farm machinery across there. But in any event, the court heard plenty of testimony about that and was certainly free to believe that over Paul's testimony that he thought that Mike could get through there. It's not the mere fact that you can get there legally on foot. It's are you going to be able to use the property for its intended purpose. And that was the problem that Mike had. That's why he needed that easement. And Paul never testified that he didn't intend for Mike to have the ability to cross his field. So if you look at that January 2013 agreement, it did actually have an easement across Paul's property for the land that Mike was going to get. Now we're talking about different tracts of land, but if Paul is now saying, well I just didn't want him to have an easement, well that wasn't what he said five months ago. The contract again expressly provided for modification of the boot upon the division, which was done. And again, this is where I mainly take issue with what Mr. Cade indicated. I did not see anywhere in the transcripts, in the record, where Paul said, well if I would have known that Mike was going to want an easement, I never would have signed this contract. I never saw that anywhere. If it's in there, then it's in there and I'm wrong. But I did not see anywhere where Paul said it was never my intention for him to have an easement. If I knew he was going to get an easement, I never would have signed that contract. I think that's an important point. This is basically Paul saying Mike didn't need an easement. Not that he didn't intend for Mike to be able to access his own property. Evidence showed that Mike did need an easement. It was a reasonable interpretation of the contract and of the trust. To issue him one, it was the most logical and simple solution to the issue. It conformed to the intent of the trust and the contract. If your honors were to think that, or to decide that, yes, that contract is null and void, we have to throw it back. Well, what we're going to do is start another round of litigation, renegotiation, or perhaps the court might just say, okay, I'm not listening to any of you guys anymore. I'm just going to go ahead and order that a deed be issued, giving each one of you an undivided one-fifth interest in all of this property, and let you guys sort it out. I don't think anybody wants that to happen either. So I would ask your honors to find that the issuance of the deeds with this minor easement across Paul's property was consistent with the intent and purpose of the contract, certainly authorized by the trust, and to affirm that issue. Short of that, I have provided your honors with an analysis of whether Mike, even if we're not entitled to an easement under the contract in the trust, would be entitled to one by implication. Now, Mr. Cade, I think, indicates that one of my arguments was an easement by prescription. I've not argued easement by prescription. That's adverse possession where you've used something for over 20 years. What I'm actually arguing was an easement by implication by prior use or an easement by necessity. I think really both of those apply here because the implication by prior use is where you've got a situation where a piece of land was being used for a certain purpose for a long period of time. Then there's a split, and that easement is intended to have been permanent. And so after the split, the person who needs the easement gets to use it. I think under the facts of this case, that certainly is the case here because this land was used for so many years by Mr. Butcher, the kid's father, and then this is going over the same place that he used to go to to farm that entire field. Is my understanding correct that the trial court didn't indicate what sort of easement applied? I think what the trial court did was essentially ordered the recording of the deed that was issued by the trustees, which actually had the easement in it. So I don't think the trial court indicated, okay, this is an easement by necessity, or this is an easement by implication by prior use. I think there was some argument to that effect at the motion to reconsider stage, but it was mainly over just the issuance of the deed at the beginning. Does the absence of any designation by the trial court undermine your argument? Well, I think what I'm trying to say, I don't think it undermines my argument, but what I'm saying is that that is an alternative reason to affirm the trial court. Because I think even if your honors were to find that there was an easement by necessity or by implication, I don't think that would change the nature of the use of the easement. Because let's face it, the purpose of the easement is for Mike to be able to take his farm equipment down the edge of the field on Mike's property to get to his little sliver down in the corner. Whether you call it an easement that is just authorized by the trust or by implication, I don't think that's going to change the nature of the use of it at all. So I don't know whether you call it that or just affirm what the trial court did because it was authorized by the trust. I don't know that that really makes a tremendous amount of difference. And that is all I have. Do your honors have any other questions? I don't see any. Okay, thank you, Your Honor. Mr. Cate, rebuttal. Thank you. Your honors, I want to try to lead back to two small points, and we're going to stay on the easement, because we haven't talked about that particular area as much as we probably would like. The easement in regard to what Counselor Cooper stated initially. She said, I tried to quote as best I can, the agreement from the June 13 agreement couldn't be implemented as contemplated by the parties. That's very troubling. It couldn't be implemented as contemplated by the parties. At best, then you have mutual mistake. You do have to take it back. I agree with Counsel. We don't want to have to see this redone necessarily either. I'd go back to the trial court to start us for a win. But my point is, if that is truly what we're saying, then I think that is the only course of action. You have a situation in which, and we heard an argument a moment ago, the easement is determined after the fact on the survey that they determined, oh, wait, there's some tillable ground. I need an easement. So he asks Paul for the easement. Paul says, no, this is out. Heck with it. I'll just get it from the trustees. I can get it this way instead. Is she correct that the easement is worth less than $700? I don't know that. Your Honor, it was done arbitrarily. The only persons that determined that were the trustees. They assigned a value to it. Mark Lance didn't have a chance to. Was there any disputed evidence presented to that at the trial level? I don't believe there was as to value, Your Honor, and I apologize for not knowing for sure. Would I be off the track to guess that if it were worth, let's say, $20,000, there would have been disputed evidence presented? Possibly. I mean, possibly. But at the same time, I don't want to concede the issue that it was $700 is what the trustees assigned to it. Could it have also been $5,000? Possibly. I don't know that. And, Your Honors, I think easements, I mean, as we all know from land development, easements can be as valuable as anything. I mean, you can actually have easements that are as valuable as the land. But my point being, the point is – Without the easement, the land would be worthless. I would dispute that, Your Honor. I would dispute that it's valueless. It would be possibly – It would be worth less. It would be worth less. Yes. It would be worth less, Your Honor. Which would then mean they wouldn't be getting any for the division of land. No, but that's where BOOT comes in, and that's where I totally agree. BOOT takes care of that. And I guess I have a different interpretation of what BOOT is. I've done a lot of 1031 exchanges. Sir, did Paul say that just give me more money and we're fine? I didn't miss – Did Paul say give me more money then in the BOOT and then we're fine? I don't believe he said that. I think he said, I just don't want the easement across my ground. Fix it with – fix it maybe possibly – I mean, they could have – the trustees could have fixed it with BOOT, but they chose not to. My point is, yeah, you could have maybe fixed this possibly, in that sense, to Mike's benefit slightly. Then if it does decrease the value of the ground, I suppose that was correct. And that's where BOOT does come in. I've done a lot of land division. I've done a lot of different types of splits. That's 1031 exchanges. BOOT is cash. It's money. It's not difference of ground. There's no way the IRS would agree that BOOT is also – when you're saying we still have to agree as to BOOT, that's also an agreement we can also agree later as to easements or redivision of land. I don't believe that that's correct. I think BOOT is only cash. And cash would have fixed this. But I don't think that Bill and Paul, Paul in this case, should be stuck with what he didn't agree to. And, Your Honor, I respectfully say that he shouldn't have to agree to that, even if it is of lesser value ameasement. It isn't possibly a $20,000 ameasement. And I still – I firmly believe that the law would support that when five persons enter a room and agree to something, that they still are going to be bound by it. That's where we're at. The parties simply should be bound by the agreement. Everyone should have gotten the deeds as they contemplated. And, yes, Your Honor, it would have been fixed by a BOOT calculation if there was a later survey done. And it's highly instructive when your counsel says, Hey, and I asked Paul for it. He said no. Okay, then I just went over here and asked the trustees for it. All right, put that. And really, very quickly, the trustees definitely, if they had divided out all the ground on their own, divided it all out, and some easements had been done different ways and stuff, and this is without any type of meeting of the minds, without any of the parties meeting, they could have done that. And I think they would have been on a more firm legal footing in terms of what actually happened, as compared to all five of them agree as beneficiaries to a division, and then it changes after the fact. I understand that, Your Honors, don't maybe feel that the easement is of greater value, and thus it's not important in that sense. But it is important to the parties involved that they do believe that the agreement should be upheld, especially when counsel acknowledged it couldn't be implemented as it was contemplated. And that's the detachment of Bill and Paul. Thank you, Your Honors. If there's any other questions. I don't see any questions. See you. Thank you, counsel. Thank you, counsel. Thanks to all counsel. The case will be taken under advisement, a written decision shall issue, and the court stands in recess.